NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0826n.06
Filed: October 7, 2005

No. 04-3989

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SANCTUARY AT WHISPERING MEADOWS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| TOMMY THOMPSON, Secretary, United States Department of Health and Human Services; and UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | ) | DEPARTMENT OF HEALTH AND HUMAN SERVICES |
| | ) | |
| | ) | |
| | ) | |
| | ) | OPINION |
| | ) | |
| Respondents. | ) | |
| | ) | |

Before: GUY, BATCHELDER, and GILMAN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge**. The Sanctuary at Whispering Meadows is a nursing facility that participates in the Medicare and Medicaid programs. In October and November of 1999, a survey conducted on behalf of the Centers for Medicare & Medicaid Services (CMS) determined that Whispering Meadows was not in substantial compliance with Medicare regulations regarding the prevention and treatment of pressure sores. CMS imposed a civil monetary penalty (CMP) of $2,800 on Whispering Meadows as a result of the noncompliance. Whispering Meadows appealed the imposition of the penalty to an administrative law judge (ALJ), who concluded that the facility was not in compliance with the regulations and that the amount of the penalty was

reasonable. The Departmental Appeals Board (DAB) of the Department of Health and Human Services (HHS) affirmed the judgment of the ALJ in a thorough and well-reasoned opinion that was supported by substantial evidence. We therefore **AFFIRM** the decision of the DAB.

## I.  BACKGROUND

Federal law requires that facilities participating in the Medicare and Medicaid programs submit to periodic inspections, known as surveys, to ensure that they are in substantial compliance with all federal requirements for skilled nursing facilities. These surveys are generally conducted by the health departments of the various states on behalf of CMS.

The Ohio Department of Health conducted such a survey at Whispering Meadows in October and November of 1999. During this survey, Whispering Meadows was found to be out of compliance with 42 C.F.R. § 483.25(c)(1), which requires participating facilities to ensure that "[a] resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they were unavoidable." In particular, the survey found that one patient, R2 (referred to by the designation used by the government to protect his privacy), had been admitted to Whispering Meadows without pressure sores and had subsequently developed them after beginning to take psychoactive drugs that decreased his mobility. The surveyor reviewed R2's medical records and concluded that the pressure sores were not clinically unavoidable.

CMS agreed with the surveyor and imposed a CMP of $2,800 on Whispering Meadows. Whispering Meadows appealed CMS's determination, but an ALJ upheld the findings of the Ohio

Department of Health and the imposition of the CMP. The DAB affirmed the ALJ's decision. On appeal to this court, Whispering Meadows claims that the ALJ erred by applying an incorrect burden of proof, that the facility was in substantial compliance with all applicable nursing home standards, and that the CMP imposed was excessive.

## II.  ANALYSIS

### A.      Standard of review

This court must affirm the Secretary's findings if they are "supported by substantial evidence on the record considered as a whole." 42 U.S.C. § 1320a-7a(e). This "standard of review is highly deferential" with respect to issues of both law and fact. *Woodstock Care Ctr. v. Thompson*, 363 F.3d 583, 588 (6th Cir. 2003). In reviewing the Secretary's interpretation of HHS regulations, the court "may overturn the Secretary's decision only if it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Id.* (citations and quotation marks omitted).

### B.      The burden of proof imposed upon Whispering Meadows

We must first address Whispering Meadows's claim that the ALJ applied the wrong burden-of-proof formulation in requiring the facility to show compliance with the regulations by a preponderance of the evidence. According to Whispering Meadows, the burden-of-proof standard enunciated in *Hillman Rehabilitation Center*, D.A.B. No. 161 (1997), violates section 7(c) of the Administrative Procedure Act (APA), which places the burden of proof on the "proponent of a rule or order." 5 U.S.C. §556(d). Whispering Meadows also claims that the *Hillman* rule is a substantive rule that was not promulgated under the APA's notice-and-comment procedures.

We need not review the DAB's decision regarding the proper standard of review, however, because the evidence in this case is such that HHS would prevail regardless of which party bears the burden of proof. Thus, the ALJ's assignment of the burden of proof did not affect the disposition below. *See, e.g., Batavia Nursing & Convalescent Ctr. v. Thompson*, 129 Fed. Appx. 181, 184 (6th Cir. 2005) (unpublished) (declining to consider whether the *Hillman* rule violates the APA because substantial evidence supported the finding that the facility was out of compliance). We will eventually be required to examine the merits of *Hillman* and rule on the burden-of-proof issue, but this case, in which the evidence so clearly favors HHS, is not the appropriate vehicle for that consideration.

**C.     The ALJ's conclusions that Whispering Meadows was not in compliance with 42 C.F.R. § 483.25(c)**

Federal regulations require nursing facilities to ensure that a resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they were unavoidable. 42 C.F.R. § 483.25(c). The DAB issued a lengthy and well-reasoned opinion that upheld the ALJ's conclusion that the pressure sores were not unavoidable. In particular, the DAB relied on several findings that demonstrate the failure of Whispering Meadows to aggressively prevent and treat R2's pressure sores, including the following: (1) R2 was placed on psychoactive medication that decreased his mobility in June of 1999, but his plan of care did not take this into account until August of 1999; (2) R2's plan of care called for daily skin assessments, but the physician's orders and treatment records called for weekly rather than

daily assessments; and (3) during the periods of greatest susceptibility to pressure sores, the nursing records document only sporadic repositioning of R2.

Substantial evidence also supports the ALJ's decision to credit the determination of the nurse surveyor over Dr. Nagle's conclusions that the pressure sores found on R2 were unavoidable. The nurse surveyor appeared at the hearing, testified under oath, and was subject to cross-examination, whereas Dr. Nagle did not appear. Moreover, Dr. Nagle's opinion was submitted as a letter rather than an affidavit affirmed under penalty of perjury. The letter also failed to describe the analytical process that led the doctor to conclude that R2's pressure sores were unavoidable. Most significantly, the ALJ noted that Dr. Nagle first expressed the opinion that R2's pressure sores might be unavoidable only after it became apparent that the resident's condition would have a serious negative impact on Whispering Meadows.

**D.      The ALJ's conclusion that the amount of the CMP was reasonable**

In affirming the ALJ's holding, the DAB did not abuse its discretion in finding that the CMP of $2,800 imposed by CMS was reasonable. CMS is permitted by the regulations to impose a penalty ranging from $1,000 to $10,000 for deficiencies of this type. 42 C.F.R. §488.438(a)(2). In this case, the CMP is relatively low, and sufficient evidence supports the ALJ's finding that the penalty will not compromise resident health and safety at Whispering Meadows.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the decision of the DAB.